UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| SAMANTHA S., | Case No. 6:22-cv-01703-AR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security benefits, plaintiff Samantha S. (her last name omitted for privacy) challenges the Administrative Law Judge's evaluation finding unpersuasive the medical opinions of Laura Schaben, M.D., Cynthia Potts, LPC, and Sarah Reynolds Jackson, LMT. Plaintiff also contends that the ALJ failed to provide specific, clear and convincing reasons for discounting her subjective symptom testimony, improperly rejected the testimony of three lay witnesses, and failed to include all of

Page 1 – OPINION AND ORDER

plaintiff's limitations in the hypothetical to the vocational, resulting in error at step five. The court concludes the ALJ did not err and the Commissioner's decision is AFFIRMED.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) on November 13, 2018, alleging disability beginning August 16, 2018. (Tr. 193.) Her claim was initially denied on March 5, 2019, and again upon reconsideration on November 7, 2019. (Tr. 85, 101-02.) Afterwards, plaintiff filed for a hearing, which was held before the ALJ on December 4, 2020. (Tr. 32.)

In denying plaintiff's application for DIB, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 16, 2018, the alleged onset date. (Tr. 15.) At step two, the ALJ determined that she had the following severe impairments: multiple sclerosis, neurocognitive disorder, and depressive disorder. (Tr. 16.) At step three, the ALJ determined that her impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 16.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. §§ 404.1545, 416.945, the ALJ determined that plaintiff has the RFC to perform light work with the following nonexertional limitations: never climb ladders, ropes, or scaffolds;

---

[1] This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id*.; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

Page 2 – OPINION AND ORDER

tolerate occasional exposure to workplace hazards, such as unprotected heights and exposed moving machinery; can perform simple, routine tasks that can be learned in 30 days or less; and can tolerate occasional contact with coworkers and the general public. (Tr. 17.)

At step four, the ALJ determined that plaintiff is unable to perform any past relevant work as a vocational rehabilitation counselor and an investigator. (Tr. 23-24.) In light of her RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as a production assembler, small products I assembler, and cleaner housekeeper. (Tr. 25.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

### A.   *Plaintiff's Testimony*

Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). At the first stage, the claimant must present objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged

Page 3 – OPINION AND ORDER

symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 416.929. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017).

Plaintiff contends that she cannot engage in full-time, competitive employment because of her multiple sclerosis (MS) and MS-related issues, including anxiety, depression, extreme fatigue, cognitive problems, difficulty speaking, and difficulty walking. (Tr. 214.) Plaintiff alleges that she naps almost daily, suffers mental and physical exhaustion, and that her ability to process information has been significantly reduced. (Tr. 236.) Plaintiff also stated that although she could function on good days, on bad days she sleeps, foregoes personal care, and does not drive. (Tr. 237-39.) Even on good days, plaintiff stated that it takes her longer than normal to do things such as prepare meals, shop, and perform housework. (Tr. 238-39.)

At the hearing, plaintiff testified that her multiple sclerosis and MS-related symptoms caused her to stop working. (Tr. 47.) Her fatigue made her leave work more often, prevented her from traveling as was required by her position, and her cognitive decline made her forget tasks and lose track of client requests and appointments, resulting in a negative performance review. (Tr. 47-48.) She explained that her fatigue causes her to sleep more and become more dependent on her family. (Tr. 48.) Physically, plaintiff testified to having problems with her extremities, experiencing pins and needles in her hands and feet, predominantly on the right, which prevents her from grasping writing and kitchen utensils. (Tr. 49.) When describing her good and bad days,

Page 4 – OPINION AND ORDER

plaintiff explained that she has more bad days than good days, and that on bad days she is completely incapacitated. (Tr. 49.) She also testified that on bad days, her legs are what she described as "log legs," meaning she would sometimes have to physically lift them using her hands, with pain and muscle cramping, worse on the right. (Tr. 50.) Plaintiff stated that she sometimes is unable to stand to do the dishes, or needs breaks, depending on whether it is a good day or bad day. (Tr. 51.)

She also testified that she cannot sit for longer than 30 to 60 minutes because she feels numb with pain, and needs to move around. (Tr. 51.) Plaintiff described having debilitating headaches every two weeks that require medication, and that she needs to lie down after taking it. (Tr. 52.) When asked about day-to-day chores like shopping, cleaning, and cooking, plaintiff testified that her children, husband, and housecleaner handle most of the work. (Tr. 53.) When asked about treatment, she testified that she is on Ocrevus infusions, that she needs to stay active, that her insurance supports her doing yoga, and that she has a massage therapist for symptoms like muscle spasms and other muscle troubles. (Tr. 54.) When asked about her daily activities such as hiking, she clarified that a report of completing a 20-mile hike in her medical records was a mistake and was not something she could have done before her sickness progressed. She also explained that her hiking is limited to two miles with breaks, that she does not go alone, and that she uses a walking stick for balance. (Tr. 54-55.)

When asked about her cognitive issues, plaintiff testified that she has trouble taking in information, speaking clearly, and tracking conversations when in group settings. (Tr. 58.) She testified that she isolates at home and avoids meeting new people. (Tr. 58.) Plaintiff further explained that she must read written instructions multiple times, that verbal instructions are frustrating, and that she becomes overwhelmed by stressors. (Tr. 58-59.) She stated that she

Page 5 – OPINION AND ORDER

relies on her family, uses a chalkboard for reminders about activities and appointments, and that therapy is helping her deal with the stress of illness. (Tr. 59-60.)

The ALJ discounted plaintiff's subjective symptom testimony because her level of activity is inconsistent with her allegations and her statements are inconsistent with her medical records. Plaintiff challenges the ALJ's assessment of her subjective symptom testimony, contending that the waxing and waning nature of her MS renders her unable to sustain full-time employment, and that the ALJ erroneously singled out a few instances of higher functioning and greater activities to discount her testimony in its entirety. As explained below, the ALJ did not err.

1. **Daily Activities**

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict his testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)).

The ALJ discounted plaintiff's subjective symptom testimony because she can drive, hike, bike, do yoga, garden, and walk multiple times a week. (Tr. 19.) The ALJ explained that the high level and frequency of her activities undermines her allegations of significant fatigue,

Page 6 – OPINION AND ORDER

difficulty using her lower extremities, and loss of control of her right hand. (Tr. 19.) In doing so, the ALJ identified specific instances, such as plaintiff driving from eastern Oregon during the relevant period, regularly engaging in yoga, pursuing a more aggressive yoga practice, doing yoga for 1.5 hours a day on a vacation, and hiking 20 miles in one weekend. (Tr. 19, 55-56, 658, 660, 666, 702, 705.)

Plaintiff argues that the ALJ erred because he failed to consider her ability to sustain activity for a full day or full work week. She alleges that her hiking and yoga are minimal and are performed only on good days. She challenges the ALJ's reliance on her ability to hike 20 miles in a weekend, contending that the record entry was mistaken. The ALJ acknowledged plaintiff's hearing testimony and offered the following rationale:

> While [plaintiff] contested some of these entries during testimony, namely that she could have hiked over 20 miles in one weekend, progress notes supporting high levels of activity are frequent enough that it is unlikely that her providers would be routinely confused about her level of activity, and thus it is likely that she has continued to engage in hiking activity, even if the exact amount of miles hiked in that one weekend was incorrectly recorded.

(Tr. 19.) As the ALJ described, records show that plaintiff does not need an assistive device when walking and that she does yoga at least five times a week, which is contrary to her report that her bad days leave her bedridden and incapacitated more often than good days. (Tr. 19, 49, 660, 693, 715.) The ALJ's finding that the frequency and level of plaintiff's activity is inconsistent with her allegations of disability is supported by substantial evidence, is a reasonable interpretation of the record, and therefore must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### 2. Inconsistency with Medical Records

Page 7 – OPINION AND ORDER

The ALJ discounted plaintiff's subjective symptom testimony based on alleged inconsistencies with the medical record. Inconsistency with the medical record can provide a clear and convincing basis for discounting a claimant's symptoms, so long as it is not the sole basis for doing so. *Smartt v. Kijakazi*, 53 F.4th 489, 498-99 (9th Cir. 2022); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Plaintiff argues that because the ALJ did not identify what information in her medical records was inconsistent with her allegations, he failed to provide specific, clear and convincing reasons. The court disagrees.

Contrary to plaintiff's contention, the ALJ identified several specific inconsistencies between her allegations and the medical evidence showing normal gait, normal or mostly normal strength in her upper and lower extremities, and mostly normal or mild findings regarding her cognitive abilities. (Tr. 18-20, citing Tr. 475, 537, 555, 559, 561, 569, 578, 598, 611, 617, 649, 655, 660, 668, 702, 705.) For example, the ALJ "acknowledge[d] the progressive nature of [plaintiff's] condition, as reflected in notes from mid-2019" that showed some deterioration, yet "imaging in late 2020 did not show any new lesions or progression of current lesions." (Tr. 19, citing 555, 610, 614.) The ALJ recognized that plaintiff reported having difficulty finding the correct words, having a delayed response, and that she is sometimes described as mildly tangential. (Tr. 20.) The severity of plaintiff's allegations, the ALJ found, were undermined by testing which revealed that her memory, attention, and cognition were largely intact. (Tr. 20, citing 426, 556, 559, 561, 617.) Viewing those records, the ALJ determined that the severity of plaintiff's allegations was not completely supported by the objective medical evidence and demonstrated that she would be limited to simple work with social limitations. (Tr. 20.) Contrary to plaintiff's contention, the ALJ identified specific, clear and convincing examples in the record

Page 8 – OPINION AND ORDER

that undermined her allegations. The ALJ's findings are supported by substantial evidence, are a reasonable interpretation of the record, and will not be disturbed. *Smartt*, 53 F.4th at 499.

B.     *Medical Opinion Evidence*

Plaintiff argues that the ALJ erred in evaluating the medical opinions of Dr. Laura Schaben, her neurologist; Cynthia Potts, her therapist; and Sarah Reynolds Jackson, her massage therapist.

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. § 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinion in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the

Page 9 – OPINION AND ORDER

claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how they considered those secondary medical factors unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").[3] Each opinion is addressed below.

**1. Dr. Laura Schaben**

Plaintiff argues the ALJ improperly found the opinion of Dr. Schaben unpersuasive. Dr. Schaben has been plaintiff's neurologist since at least 2011 and treated plaintiff throughout 2020. (Tr. 555, 713.) Dr. Schaben also provided two medical source statements, one in March 2020, and another in December 2020. (Tr. 549-52, 713-16.)

In her March 2020 statement, Dr. Schaben found marked limitations in plaintiff's understanding and memory, in sustained concentration and persistence, and in adaptation. (Tr. 550-51.) Within the sustained concentration and persistence, plaintiff had mild impairment to her ability to sustain an ordinary routine without special supervision and in her ability to work in

---

[3] Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion;" rather, the ALJ's reasons must "simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

coordination or close proximity to others without distracting them. (Tr. 550.) In plaintiff's social interactions, Dr. Schaben assessed a marked limitation in her ability to accept instructions and respond appropriately to criticism, with only mild or no limitations in the other subcategories. (Tr. 550-51.) Dr. Schaben also stated plaintiff would be off task more than 30 percent of the time and absent from work five days or more a month. (Tr. 552.) Dr. Schaben based this assessment on plaintiff's medical records, physical exams, consultative medical opinions, x-rays, CT scans, MRIs, and psychological evaluations. (Tr. 551.)

In her December 2020 statement, Dr. Schaben identified multiple symptoms plaintiff suffers from due to her MS, including unstable walking, balance problems, weakness, increased deep reflexes, blurred vision, personality change, difficulty solving problems, loss of manual dexterity, chronic fatigue, parasthesias, and muscle plasticity. (Tr. 713.) She noted plaintiff also has significant and persistent disorganization of motor functions in her extremities, resulting in sustained disturbance of gross and dexterous movement or gait and station. (Tr. 713.) Dr. Schaben opined that plaintiff can only walk one to two city blocks without rest or severe pain, can sit for two hours at a time, walk for 30 minutes, can sit for six hours and walk less than two hours in a an eight-hour workday, needs to sit, stand, or walk at will, and needs unscheduled breaks every one to two hours for 10 to 15 minutes. (Tr. 714.) Additionally, Dr. Schaben opined that plaintiff can lift 10 pounds occasionally and less than 10 pounds frequently, and that she can occasionally stoop and twist, and rarely crouch or squat. (Tr. 715.) Dr. Schaben also assessed that plaintiff postural and manipulative limitations in her upper extremities due to incoordination, sensory loss/numbness, and fatigue, and that she can use her hands to grasp, turn, and twist objects five percent of the time, use her fingers for fine manipulation up to 20 percent, reach forward up to 10 percent, and reach overhead five percent. (Tr. 715.) According to Dr. Schaben,

Page 11 – OPINION AND ORDER

plaintiff would also be off task 25 percent or more of the time, and is limited to low stress work because of cognitive dysfunction with high stress. (Tr. 715-16.) Finally, Dr. Schaben opined that plaintiff's bad days exceed four days per month and she must avoid heat and high stimuli such as noise and light. (Tr. 716.)

The ALJ found those opinions unpersuasive because the severity of limitations assessed are unsupported by Dr. Schaben's own records, which show that plaintiff has a normal gait, and normal or mostly normal strength in her upper and lower extremities. (Tr. 21, citing Tr. 475, 537, 556, 598, 624.) Similarly, the ALJ found Dr. Schaben's notes inconsistent with the mental limitations assessed since plaintiff performed "fairly well" on cognitive testing. (Tr. 21, citing Tr. 556.) The extreme limitations that Dr. Schaben ascribed to plaintiff's hands (five percent of the day) would limit her to using her hands to only three minutes out of each hour, which the ALJ found was undermined by other evidence revealing that during the relevant period, she reported driving and even driving for extended periods. (Tr. 21, citing Tr. 660, 666.) In terms of plaintiff's ability to lift and carry, the ALJ acknowledged plaintiff's most recent testing putting her grip strength between 16-20kg, and thus limited plaintiff to light work. (Tr. 21, 564.) The ALJ also found Dr. Schaben's opinion regarding plaintiff's walking limitation as one to two blocks was unsupported by her own treatment notes describing plaintiff's activities, which show that she regularly hikes, bikes, and walks. (Tr. 21, citing Tr. 655, 658, 660, 665, 668, 702.) Lastly, the ALJ found Dr. Schaben's environmental limitations unsupported because her treatment notes make no mention of environmental limitations, and the heat, noise, and light limitations otherwise are unexplained. (Tr. 21.) The ALJ's explanation for finding Dr. Schaben's opinions unpersuasive is supported by substantial evidence and is sufficiently articulated. *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023).

Page 12 – OPINION AND ORDER

2.  **Cynthia Potts, LPC**

Plaintiff argues that the ALJ improperly found the opinion of Cynthia Potts, plaintiff's therapist, unpersuasive. Ms. Potts began treating patient in June 2018, seeing her weekly to monthly, with her last appointment in September 2020. (Tr. 606.) Like Dr. Schaben, Ms. Potts provided two medical source statements, one in September 2020, and another in November 2020. (Tr. 606-09, 696-99.) In her September 2020 opinion, Ms. Potts opined that plaintiff had marked limitations in her understanding and memory, in her sustained concentration and persistence, and in her adaptation. (Tr. 696-98.) Plaintiff had mostly mild or normal social interaction limitations, with only one marked limitation in her ability to ask simple questions or request assistance. (Tr. 697-98.) Plaintiff would also be absent five or more days a month and would be off task more than 30 percent of an eight-hour day in Ms. Potts' opinion. (Tr. 699.)

In her November 2020 opinion, Ms. Potts opined that plaintiff had marked limitations in her ability to understand and remember detailed instructions, and mild to moderate limitations with very short and simple instructions. (Tr. 607.) Concerning sustained concentration and persistence, Ms. Potts opined that plaintiff had marked limitations in her ability to carry out detailed instructions, maintain attention, perform activities within a schedule, sustain a routine, work in proximity to other, make simple work-related decisions, and had extreme limitations in her ability to work without interruptions from psychologically-based symptoms. (Tr. 607-08.) In her social interactions, she had no limitations to mild or moderate limitations. (Tr. 608.) In her ability to adapt, Ms. Potts opined that plaintiff had marked limitations in her ability to set realistic goals, make plans independent of others, and in her ability to tolerate normal levels of stress, with mild to moderate limitations in other subcategories. (Tr. 608-09.) Ms. Potts also believed plaintiff would be off task at least 20 percent of the time, but would not miss work due

to her mental impairments because she could not work due to her MS. (Tr. 609.) Ms. Potts also provided plaintiff's GAF scores, with a starting score of 66 and a current score of 56. (Tr. 710.)

The ALJ found Ms. Potts' opinions unpersuasive because they are inconsistent with plaintiff's other medical records. (Tr. 21.) Contrary to Ms. Potts' findings, the ALJ noted that plaintiff's records show that she is alert, oriented, pleasant, and/or cooperative, and her memory and attention are intact. (Tr. 21, citing Tr. 559, 561, 569-70, 578-83, 611, 617, 649.) The ALJ found that Ms. Potts' extreme limitations were undermined by other record evidence showing that plaintiff could use public transportation with little difficulty, regularly practice yoga, and frequently hike. (Tr. 21-22, citing 239, 655, 658, 668, 702, 705.) The ALJ also explained that Ms. Potts' GAF scores lacked objective testing criteria; that GAF scores can vary from day to day, time to time, and practitioner to practitioner; and were outweighed by other evidence. (Tr. 22.)[4] Because the ALJ adequately explained how the consistency and supportability factors were considered, and those reasons are supported by substantial evidence, the ALJ did not err in finding Ms. Potts' medical opinion unpersuasive.

### 3. Sarah Reynolds Jackson, LMT

Lastly, plaintiff argues that the ALJ improperly found the opinion of Sarah Reynolds Jackson, plaintiff's licensed massage therapist, unpersuasive. Ms. Jackson began treating plaintiff at the end of January 2019, and provided massage therapy to her one or twice per month. (Tr. 655, 691.) Ms. Jackson provided a medical source statement in November 2020, assessing plaintiff's limitations. (Tr. 691-94.) She opined that plaintiff has difficulty with motor

---

[4] It should also be noted that Ms. Potts provided no medical records for the plaintiff. Except for the fact that she confirmed she is indeed treating plaintiff, there is no underlying record basis for her assessed limitations.

function in her extremities resulting in lack of gross and dexterous movement or gait and station, and having reproducible fatigue of motor function with substantial muscle weakness. Ms. Jackson described that when plaintiff's symptoms flare, she has repeatedly fallen and dropped objects. (Tr. 691-92.) However, Ms. Jackson did not elaborate on the reproducible fatigue of motor function because it is outside the scope of her practice. (Tr. 692.) Concerning plaintiff's physical functional limitations, Ms. Jackson assessed that plaintiff needs to sit, stand, or walk at will; needs unscheduled breaks; can never lift more than 10 pounds; cannot twist, stoop, crouch, or squat; and is limited in using her hands, arms, and fingers. (Tr. 692-93.) All of those functional limitations are "depending on how symptoms are manifesting." (*Id.*) She also assessed that plaintiff would be off task 25 percent or more, that emotional factors contribute to her symptoms, that she has good and bad days, that she would miss work more than four days per month, and that stress can exacerbate her symptoms. (Tr. 693-94.) Ms. Jackson also imposed environmental limitations to temperature extremes and noise. (Tr. 694.)

According to plaintiff, the ALJ fails to appreciate the waxing and waning nature of her MS symptoms and fails to provide a legally sufficient reason for discounting Ms. Jackson's opinion. Plaintiff argues that Ms. Jackson's opinion described what she could reliably perform. Although plaintiff offers a different interpretation of the evidence, the ALJ has articulated cogent reasons that are backed by substantial evidence for finding Ms. Jackson's opinion unpersuasive. *Kitchen*, 82 F.4th at 740 ("Under the revised regulations, an ALJ need only provide 'an explanation supported by substantial evidence.'" (quoting *Woods*, 32 F.4th at 792)).

For example, the ALJ discussed that Ms. Jackson's opinion was largely premised on "how symptoms are manifesting" and that Jackson did not provide additional analysis leaving her opinion unsupported and vague. (Tr. 22.) The ALJ also found that Ms. Jackson's opinion

Page 15 – OPINION AND ORDER

relies on plaintiff's self-reports rather than objective findings, and that the environmental limitations fall outside of her expertise and are otherwise unsupported. (Tr. 22.) Lastly, the ALJ acknowledged that plaintiff's "symptoms wax and wane to some degree" but found that "the significant ups-and-dowsn suggested by Ms. Jackson are not entirely consistent with [plaintiff's] demonstrated ability to regularly hike and engage in yoga." Tr. 22.) The ALJ's findings are backed by substantial evidence, are a reasonable interpretation of the record, and will not be disturbed. *See Ford*, 950 F.3d 1141, 1155 (9th Cir. 2020) (explaining that an ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions") (citation omitted).

C.   *Lay Witness Testimony*

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that competent lay witness testimony "*cannot* be disregarded without comment" (emphasis in original)).

Plaintiff's husband, father, and mother provided third-party statements. (Tr. 228-35, 295-303.) Plaintiff argues the ALJ erred by failing to provide germane reasons for discounting their statements, advancing the same arguments that she did regarding her own testimony. The Commissioner responds that the ALJ discounted the third-party statements for the same reasons as plaintiff's subjective symptom testimony, namely inconsistency, and that the ALJ did not err. The Commissioner is correct.

Because the ALJ did not err in discounting plaintiff's subjective symptoms, and the lay witnesses describe similar limitations, the ALJ did not err in discounting the lay testimony.

Page 16 – OPINION AND ORDER

*Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (holding that if ALJ has provided specific, clear and convincing reasons for discounting claimant's testimony, and lay witness testimony is similar, ALJ has provided germane reasons for discounting it).

### D.   *The ALJ Did Not Err at Step Five*

Plaintiff argues that the ALJ erred at step five because the hypothetical posed to the vocational expert did not contain limitations and restrictions contained within her testimony, the lay witness testimony, and the medical opinions of Dr. Schaben, Ms. Potts, and Ms. Jackson. An ALJ's hypothetical to a vocational expert is only required to contain those limitations that are credited and supported by the record. *See Sample v. Schweiker,* 594 F.2d 639, 643-44 (9th Cir. 1982). As discussed above, because the court has not identified any errors in the ALJ's assessment of the evidence, the hypothetical posed to the vocational expert contained all of the credited limitations and restrictions supported by the record. Accordingly, there is no error at step five.

### CONCLUSION

For the above reasons, the court AFFIRMS the Commissioner's final decision, and this action is DISMISSED.

ORDERED on March 5, 2024.

_____
JEFF ARMISTEAD
United States Magistrate Judge